Christina BELLON, Plaintiff-Appellant,

v.

Ripon COLLEGE, Defendant-Respondent.

Court of Appeals

*No. 04–0515. Submitted on briefs November 23, 2004.—Decided January 26, 2005.*

2005 WI App 29

(Also reported in 693 N.W.2d 330.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Tamara B. Packard* and *Lester A. Pines* of *Cullen, Weston, Pines & Bach, LLP*, Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Shannon M. Trevithick* of *Britton & Associates, S.C.*, Milwaukee.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J. Christina Bellon appeals from an order dismissing all four of her causes of action against Ripon College. Bellon claims Ripon engaged in three acts of common law misrepresentation to induce employment and one act of misrepresentation in violation of WIS. STAT. § 103.43 (2003–04).[1] She contends that issues of material fact exist from which a jury could find misrepresentation; therefore, summary judgment dismissing her claims was inappropriate. She further contends that the circuit court's determination that she is not protected by § 103.43 was error. We disagree and affirm the order of the circuit court.

## BACKGROUND

¶ 2. In fall 1999, Bellon read an advertisement for a tenure track faculty position at Ripon College. On January 31, 2000, she met with David Seligman, Ripon's vice president and dean of faculty at the time, to interview for the position. During her interview, Bellon asked about Ripon's financial condition. In response to her questions, Seligman described Ripon's endowment, discussed past and current student enrollments, and told Bellon that one of the goals of Ripon's comprehensive plan was to raise faculty salaries to be more competitive with comparable institutions.

¶ 3. On March 3, 2000, Ripon offered Bellon a position as assistant professor of philosophy. Four days later, the University of Nevada-Las Vegas offered Bellon a similar position with a higher salary. On March 28, Bellon accepted Ripon's offer and continued to negotiate salary and employment-related expenses. Bellon taught for Ripon during the 2000–01 academic year, and

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

in May 2001, she accepted an offer for continued employment through the 2001–02 academic year. Ripon notified Bellon in August 2001 that budget circumstances required Ripon's Board of Trustees to eliminate her position and that her employment with Ripon would terminate at the end of the 2001–02 year.

¶ 4. On June 24, 2002, Bellon filed suit against Ripon alleging fraudulent advertising contrary to WIS. STAT. § 103.43, as well as three types of misrepresentation: intentional, negligent and strict liability. She claimed special damages in the amount of $24,398.45, plus attorney fees. Ripon filed a motion for summary judgment, and a hearing was held on December 12, 2003. The circuit court granted Ripon's motion as to all causes of action and dismissed Bellon's complaint with prejudice. Bellon appeals.

## DISCUSSION

¶ 5. Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). We will reverse a decision granting summary judgment if either (1) the trial court incorrectly decided legal issues, or (2) material facts are in dispute. *Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993). When reviewing a summary judgment, we employ the same methodology as the circuit court and our review is de novo. *Gross v. Woodman's Food Mkt., Inc.*, 2002 WI App 295, ¶ 30, 259 Wis. 2d 181, 655 N.W.2d 718, *review denied,* 2003 WI 32, 260 Wis. 2d 752, 661 N.W.2d 100 (No. 01–1746). Where the complaint states a claim for relief and the answer joins issue, we then look to the affida-

vits to determine whether there are any issues of material fact that would entitle the opposing party to a trial. *Id.* Any reasonable doubt as to the existence of a factual issue must be resolved against the party moving for summary judgment. *Maynard v. Port Publ'ns, Inc.*, 98 Wis. 2d 555, 563, 297 N.W.2d 500 (1980).

¶ 6. Wisconsin recognizes misrepresentation to commence an employment relationship as an actionable claim. *See Mackenzie v. Miller Brewing Co.*, 2001 WI 23, ¶ 18 n.15, 241 Wis. 2d 700, 623 N.W.2d 739. A species of fraud, misrepresentation may take one of three familiar tort classifications: intentional, negligent, and strict responsibility. *Whipp v. Iverson*, 43 Wis. 2d 166, 169, 168 N.W.2d 201 (1969). All three forms of misrepresentation require the claimant to show that the defendant made a representation of fact that was untrue and that the plaintiff believed the representation to be true and detrimentally relied upon it. *Lewis v. Paul Revere Life Ins. Co.*, 80 F. Supp. 2d 978, 995 (E.D. Wis. 2000). The unique elements of each claim are discussed at length in *Grube v. Daun*, 173 Wis. 2d 30, 54–55, 496 N.W.2d 106 (Ct. App. 1992), but we need not address them here.

¶ 7. Bellon argues that summary judgment was inappropriate here because a reasonable jury could have determined that Ripon made material misrepresentations on at least four topics: (1) Ripon's endowment, (2) student enrollment, (3) faculty salaries, and (4) Ripon's overall financial stability. Bellon contends that Ripon "led [her] down a garden path in order to induce her to accept a faculty position with the College." She concludes that "Ripon's misrepresentations denied [her] the freedom to make an informed choice and she was damaged by that process."

¶ 8. Ripon responds that the burden Bellon wishes to place on prospective employers is unreasonable. It asserts that it provided truthful answers to Bellon's questions regarding the college's endowment, enrollments, faculty salaries, and the general financial condition of Ripon at that time. Ripon disputes that it had a duty to predict unforeseeable market fluctuations, capital campaign results, or other future events; moreover, it disputes that it had a duty to predict whether Bellon's position would be eliminated in the future. Ripon concludes that there was no misrepresentation of the terms and conditions of employment: Bellon was hired to teach philosophy, which she did for two years at a negotiated salary.

¶ 9. Our review of the record demonstrates that Ripon told Bellon the actual value of the endowment, and the actual student enrollment figures and trends as of the time of Bellon's interview with Seligman. Further, we observe that Seligman showed Bellon the faculty salary handbook which contained the current salary charts and told her that a goal of Ripon's comprehensive plan was to increase faculty salaries by four to five percent each year until salaries were comparable to those at similar institutions. All of this information was true at the time of the interview.

¶ 10. Bellon contends that Ripon had a duty to say more.[2] Her claim rests on a concept once described as "passive fraud" and more commonly known as "mis-

---

[2] Bellon argues, for example, that when Seligman told her of the plan to increase faculty salaries by four to five percent each year, he had a duty to tell her that a similar provision had failed in 1998 and 1999.

representation by nondisclosure." *See Lecic v. The Lane Co.*, 104 Wis. 2d 592, 603, 312 N.W.2d 773 (1981). "The general rule is that silence, a failure to disclose a fact, is not misrepresentation unless the nondisclosing party has a duty to disclose that fact." *Id.* at 604. Here, however, Bellon seeks to impose a duty on Ripon to supply predictions, not facts. As we have held in the past, predictions as to future economic events are not generally actionable misrepresentations. *Cf. Loula v. Snap-On Tools Corp.*, 175 Wis. 2d 50, 54, 498 N.W.2d 866 (Ct. App. 1993) (a party has no right to rely on statements of value and predictions of profits). It would be illogical to hold that failure to predict the future constitutes misrepresentation. The record demonstrates that Bellon's teaching position, along with others, was eliminated due to unforeseen economic circumstances. Ripon had no duty to predict future economic realities.

¶ 11. Bellon also contends that Ripon's nondisclosure of certain past events prevented *her* from predicting future economic events. She states that had she received more information about Ripon's financial situation during her interview with Seligman, she would have "considered [Ripon's] offer with a fair sense of how much risk there was that the College would eliminate her position." Nonetheless, Bellon acknowledges that Seligman provided accurate numbers in response to her questions about the endowment, enrollments, and faculty salaries. She further acknowledges that Seligman told her that the endowment was sizeable but not as large as others, that current faculty salaries were comparably low but there were plans to raise them,[3] and that enrollments fluctuate. Bellon suggests that

---

[3] Bellon's handwritten notes from her conversation with Seligman state "general increase in salary hasn't been approved

Ripon should have provided information about the college's budget deficit, withdrawals from the endowment over the preceding nine years, dependence on enrollment levels, and enrollments over the past ten years. We conclude that Ripon had no such duty.

¶ 12. Bellon also contends that the circuit court improperly restricted the scope of Wis. Stat. § 103.43 to manual laborers only. She contends that the language of the statute requires broader application. The statute states in relevant part:

(1)(a) No person may influence, induce, persuade or attempt to influence, induce, persuade or engage a worker . . . to accept employment in this state, and no person may bring a worker of any class or calling into this state to work in any department of labor in this state, through or by means of any false or deceptive representations, false advertising or false pretenses concerning or arising from any of the following:

1. The kind and character of the work to be done.

2. The amount and character of the compensation to be paid for work.

3. The sanitary or other conditions of the employment.

4. The failure to state in any advertisement, proposal or contract for the employment that there is a strike or lockout at the place of the proposed employment, when a strike or lockout then actually exists in the employment at the proposed place of employment.

(b) Any of the acts described in par. (a) shall be considered a false advertisement or misrepresentation for the purposes of this section.

---

yet" and indicate that she understood she would be notified if the board approved a four and one-half percent salary increase.

Sec. 103.43(1)(a), (b). Bellon contends that the plain language of the statute, which applies to workers "of any class or calling," clearly encompasses all people who work. This is not the interpretation embraced by our supreme court in *Biersach & Neidermeyer Co. v. State*, 177 Wis. 388, 188 N.W. 650 (1922). There, the State prosecuted Biersach under the predecessor statute, WIS. STAT. § 1729p – 1 (1919). Biersach had advertised for tinners and had failed to include a notice that there was a strike at the Biersach plant. *Biersach*, 177 Wis. at 389. Biersach challenged the constitutionality of the statute, arguing that it violated the Fourteenth Amendment and was impermissible "class legislation" because the law applied only to manual laborers and therefore did not restrain employers of other workers such as stenographers or clerks. *Id.* at 390. The court confirmed that the statute was intended to apply to manual laborers, particularly those in industrial labor, and upheld the statute as constitutional. *Id.* at 390, 393. Our supreme court's holding is dispositive. *See State v. Olsen*, 99 Wis. 2d 572, 583, 299 N.W.2d 632 (Ct. App. 1980) (supreme court decisions are binding on the court of appeals).

## CONCLUSION

¶ 13. We hold that Bellon has failed to state any actionable claim for misrepresentation against Ripon College. We further hold that, in accordance with our supreme court's ruling, WIS. STAT. § 103.43 applies to manual laborers and cannot form the basis for Bellon's claim. We conclude that the circuit court properly granted summary judgment to Ripon College.

*By the Court.*—Order affirmed.